Paul W. MAKRAY, Plaintiff,

v.

LANDIS TILE AND MANUFACTURING CORPORATION, an Illinois corporation, Defendant.

Civ. A. No. 59 C 2055.

United States District Court
N. D. Illinois, E. D.
June 20, 1962.

Ernest A. Wegner, Chicago, Ill., William J. Stellman & James R. Sweeney, Hofgren, Brady, Wegner, Allen & Stellman, Chicago, Ill., of counsel, for plaintiff.

Ooms, Welsh & Bradway, Chicago, Ill., for defendant.

MINER, District Judge.

This matter having been fully tried before the Court, and the Court having read the pleadings filed herein by the respective parties, and the Court having heard and examined all the testimony, documents and exhibits presented by the respective parties and admitted into evidence, and the Court having read, heard and considered the briefs, memoranda and oral arguments submitted by counsel in support of their respective positions, and the Court being fully advised, the Court hereby enters its Findings of Fact and Conclusions of Law as follows:

## FINDINGS OF FACT
### INTRODUCTION

1. Plaintiff, Paul W. Makray, is an individual having a business address at 4400 North Harlem Avenue, Chicago, Illinois.

2. Plaintiff is the owner and patentee of United States Letters Patent No. 2,-859,607, application for which was filed on October 31, 1951. The patent issued to him on November 11, 1958. Since that date, plaintiff has been and remains the owner of these Letters Patent.

3. The alleged invention contained in plaintiff's patent was conceived and allegedly invented by him on July 18, 1950.

4. Defendant, Landis Tile and Manufacturing Corporation, is an Illinois corporation, having its principal place of business at 10800 South Central Avenue, Chicago Ridge, Illinois.

5. This is a suit for infringement of said Patent No. 2,859,607 owned by plaintiff, and the cause of action thus arises under the Patent Laws of the United States.

6. Defendant has counterclaimed for declaratory judgment that Patent No. 2,859,607 is invalid and that defendant does not and has not infringed or threatened to infringe said patent.

### DESCRIPTION OF THE PATENT IN ISSUE

7. The patent in issue relates to rectangular shaped plastic wall tile and more particularly to the construction of the back of such plastic tile. There are four separate but related claims set forth in the patent. Among the principal features of the construction claimed in the patent are the following:

(a) All four edges (or flanges) of the tile lie in a single plane so that when the tile is applied against a wall all the edges will be in contact therewith.

(b) Spaced slightly inward from each edge on the back side is a thin elongated rib paralleling the edge (or flange) on each side.

(c) The outer portion of the tile edge (or flange) is beveled and, in combination with the rib, creates a space or groove between the edge and the rib which space is much shorter in width and lesser in volume than the space inwardly from the rib toward the center of the tile.

(d) The rib itself is rounded from side to side, and furthermore extends rearwardly less than the edge, so that when the tile is pressed against the wall the rib does not come in contact with the wall.

8. All of the rectangular shaped plastic wall tile relevant to this case, including that described by plaintiff's patent, is attached to the wall by means of a gummy adhesive-type substance commonly referred to as mastic. Mastic is normally applied to a wall with a comb-like applicator, thus causing "valleys" of open space to appear in the mastic itself upon application to a wall.

9. When a tile constructed in conformity with plaintiff's patent is pressed against such a mastic-coated wall, the plaintiff's patent suggests that the beveled edge on the underside of the tile compresses and spreads out the mastic so as to fill the valleys between the combed ridges of the mastic. This action is purportedly aided by the rib, which retards the flow of mastic towards the center of the tile and thus supposedly insures that all the valleys in the space between the edge and rib become filled, thus creating a solid, continuous mastic seal substantially all the way around the edge of the tile. Furthermore, because the rib does not contact the wall, excess mastic not needed to create the seal in the space between the edge and the rib is allowed to flow towards the center area of the tile.

10. While plaintiff, Paul W. Makray, is the owner of the patent in suit, tile produced under authority of the patent is manufactured under a license from plaintiff by Makray Manufacturing Company and sold by Tilemaster Corporation. Plaintiff is the controlling stockholder in both Makray Manufacturing Corporation and Tilemaster Corporation.

11. Prior to the filing by plaintiff of his application for the patent in question, the plastic wall tile manufactured by Makray Manufacturing Co., and sold by Tilemaster Corporation, did not incorporate a rib adjacent to the flange on the rear face, or a beveled edge. This was known as "Standard" tile. In Mid-1951, these two corporations began manufacturing and selling another construction known as "Bev-all", which is substantially the tile depicted by the Makray patent. By 1954, sale of the "Standard" tile had been abandoned and in addition to the "Bev-all" tile, plaintiff's corporations were producing and selling a tile known as "Topic" tile, which has two parallel ribs extending along each of the four sides, spaced slightly inward from the edge flanges.

## THE VALIDITY ISSUE

12. Since defendant's counterclaim is directed to the validity of plaintiff's patent as a whole, the validity of all four claims must be determined.

13. Plaintiff claims that the combination of the rib and beveled edge flange on each of the four sides of the tile, as disclosed in the patent, solved the problem of moisture and/or air seepage behind the tile and achieved a new and unobvious result by producing a continuous strip of mastic extending around the edge of the tile between the rib and flange to form a "mastic seal" which prevents such seepage. Plaintiff further claims, and expert testimony was presented to the effect, that the spacing of the rib inwardly from the wall when the tile is applied thereto, has the new and unobvious effect of creating a perfect seal on all types of walls, by allowing the excess mastic to escape past the rib into the center area of the tile.

14. There is no evidence presented in this proceeding that any particular width of rib, or shape of rib is necessary to achieve the purported mastic seal. On the contrary, the tile made by defendant which plaintiff accuses of infringement contains a square or rectangular rib face, as opposed to the rounded rib face depicted by the illustrations and described in the specifications of plaintiff's patent.

15. Defendant claims that plastic tile, including tile manufactured under plaintiff's patent, having the beveled edge or flange but with the rib removed, also produced a continuous strip of mastic extending substantially around the entire periphery of the tile and having approximately the same width as the strip produced by identical tiles with ribs. The exhibits upon which this claim was founded, namely, Defendant's Exhibits 30 and 31, were produced under circumstances far more ideal than would exist in situations of commercial application of such tile to a wall and are thus not conclusive on the question of whether plaintiff's patent construction produced a new and unobvious result.

*The 1941 Tile*

16. In the early 1940's, Continental Plastics Corporation, an Illinois corpora-

tion, manufactured a plastic wall tile, hereinafter called "the 1941 tile", having an edge or flange extending rearwardly from the body of the tile completely around the periphery of the tile, and having a continuous rib with a square or rectangular face closely adjacent to and paralleling each edge on the inner side of the tile. The rib extended rearwardly from the tile body the same distance as the edge so that both rib and flange would touch a wall when the tile was applied thereto. This tile thus differed from the tile depicted in plaintiff's patent insofar as (a) the flange was not beveled, and (b) the rib would not be spaced inwardly from the wall when the tile was applied thereto.

17. Defendant's evidence showed that under ideal, experimental, non-commercial circumstances, the 1941 tile would, when applied to a mastic-coated surface, produce the alleged "Mastic Seal".

18. At least several hundred pieces of this "1941 tile" were manufactured by Continental Plastics Corporation and the tile was offered for sale to Montgomery Ward and Company and Sears, Roebuck and Company sometime in the 1940's. None of the tile was ever sold. Production of this tile ended in 1947 due to lack of suitable mastic, and Continental Plastics Corporation has not produced such tile since that time.

19. The 1941 tile manufactured by Continental Plastics Corporation in the 1940's, embodies the basic combination of edge flange and rib, and thus anticipates to that extent the claims of plaintiff's patent.

20. The Continental Plastics Corporation's 1941 tile was not cited or considered by the United States Patent Office during the prosecution of the application for plaintiff's patent.

*The Luster-Brown Patent and Tile*

21. On April 21, 1950, prior to the date on which the alleged invention was conceived by plaintiff, an application was filed in the United States Patent Office by Carl J. Luster and Richard G. Brown for a patent, which subsequently issued on November 2, 1954 as Patent No. 2,-693,102. This Luster-Brown patent shows a rectangular plastic wall tile of the interlocking type, wherein each tile is manufactured with either two sets of double hooks and two sets of bars, or alternatively two sets of tongues and two sets of slots. The bars or slots receive the hooks or tongues from the next adjacent tile, so that when an entire wall is covered with such tile, each tile is attached to each of the four tiles surrounding it. The two high edges or flanges of each tile on which the hooks or slots are molded are sharply beveled. The two low edges or flanges of each tile on which the bars or tongues are molded are not beveled. Yet the net effect of the interlocking system is in fact to produce a beveled edge surrounding each tile, two sides being beveled on the tile itself, and the other two sides with low non-beveled edges receiving beveled interlocking edges from two of the adjacent tiles. Furthermore, this patent also discloses a square or rectangular faced rib projecting rearwardly from the body of the tile, extending completely around the periphery of the tile parallel to and closely spaced from each of the four edges of the tile. When a single piece of such tile is applied to a wall, the rib would not be spaced inwardly from the wall. On an individual piece of tile the rib would be of the same height as the overlapping or beveled edge, and higher than the non-beveled or receiving edge, but when the tiles are completely interlocked, the rib would be of the same height as all four surrounding edges.

22. When modified by the removal of the interlocking parts (the hooks and bars or tongues and slots) and by the removal of the overlapping features (by raising the two short edges to the same height as the two beveled edges) the tile depicted by the Luster-Brown patent would have the same basic rib and flange combination defined in the claims of plaintiff's patent with the single excep-

tion that the rib would not be spaced inwardly from the wall.

23. Such modifications of the tile depicted by the Luster-Brown patent would be obvious to one reasonably skilled in the art and desiring to produce a non-interlocking, non-overlapping tile because, once the interlocking and overlapping features are removed, the purpose for shortening two of the edges is gone and the flange must naturally be built up to a uniform height on all four sides.

24. Through such modification obvious to one reasonably skilled in the art, desiring to omit the interlocking and overlapping features, the Luster-Brown patent anticipates, to the extent of the basic rib and beveled flange design, the claims of plaintiff's patent.

25. The Luster-Brown Patent No. 2,-693,102 was not cited or considered by the Patent Office during the prosecution of the application for plaintiff's patent.

*The Bevelock Tile*

26. Prior to October of 1950, more than one year prior to the filing date of plaintiff's patent, Lincoln Plastics Company of Stanford, Connecticut, manufactured commercially and sold a plastic wall tile known as "Bevelock". This tile was similar in construction to that depicted by the Luster-Brown patent, described in Finding No. 21, having interlocking double hooks and bars, and having two beveled edges upon which the double hooks were molded. It differed from the Luster-Brown patent disclosure insofar as (a) the two lower or receiving flanges upon which the bars were molded were curved on the rear face, rather than flat as depicted by the Luster-Brown patent, and (b) the square or rectangular-faced rib, which as in the Luster-Brown patent disclosure extended all the way around the tile, paralleling each of the four edges was projected rearwardly a lesser distance than the extent of the beveled flange. Thus, when such a tile is pressed against a wall, the rib would be spaced inwardly therefrom.

27. When the Bevelock tile is modified by removing the interlocking parts (the hooks and bars) and by raising the two lower edges to the same height as the two beveled edges, the resulting modified tile would be virtually identical to the tile defined in the claims of plaintiff's patent.

28. Such modification of the Bevelock tile would be obvious to one reasonably skilled in the art and desiring to produce a non-interlocking, non-overlapping tile, because once the interlocking and overlapping features are removed, the purpose for shortening two of the edges is gone and the flange must naturally be made uniform in height on all four sides.

29. Through such modification, obvious to one reasonably skilled in the art, desiring to omit the interlocking and overlapping features, the Bevelock tile anticipates the claims of plaintiff's patent.

30. The Bevelock tile was not cited or considered by the Patent Office during the prosecution of the application for plaintiff's patent.

31. Due to the existence of certain difficulties inherent in an interlocking, overlapping tile structure, it would be entirely reasonable to desire production of a non-interlocking, non-overlapping tile containing features found in an interlocking, overlapping tile, but not necessary to the interlocking or overlapping functions.

*Rectangular Plastic Wall Tile Generally*

32. The evidence is undisputed that rectangular plastic wall tiles having a beveled flange extending continuously around the periphery of the tile were in public use and on sale more than one year before the plaintiff filed his application for patent.

33. To a person reasonably skilled in the art, it would have been obvious to add to a tile having such a continuous beveled flange, a rib similar to that found on the 1941 tile, in the Luster-Brown patent, or on the Bevelock tile, all of which but the Luster-Brown patent were in public

use or on sale more than one year prior to the date of plaintiff's application for patent, the Luster-Brown patent being known prior to the claimed date of plaintiff's alleged invention, and thus produce the tile described in the various claims of plaintiff's patent.

34. It is the contention of the plaintiff that only the specific tile depicted by his patent produces a solid, continuous "mastic seal" when applied to a mastic-coated wall. If the tile depicted by plaintiff's patent does produce such a mastic seal, it was also produced, at least when applied under ideal circumstances, by both the 1941 tile described in Finding No. 16, and by the tile depicted in the Luster-Brown patent described in Finding No. 21. Both of these tiles contained a rib, paralleling each edge, which would contact the wall upon application of the tile thereto, the Luster-Brown tile also producing a four-sided beveled edge when actually applied to a wall by reason of the overlapping and interlocking features contained therein. If the tile depicted by plaintiff's patent does produce a mastic seal, substantially the same seal was produced under ordinary circumstances by the Bevelock tile described in Finding No. 26, having a rib paralleling each edge, spaced inwardly from the wall in a manner similar to that depicted by plaintiff's patent, and producing a four-sided beveled flange when actually applied to a wall by reason of the overlapping and interlocking features contained therein.

35. If any mastic seal is in fact created by a rectangular plastic wall tile having the combination of

(a) four sided beveled flange, purportedly forcing mastic inwardly when applied to a mastic-coated wall, and

(b) ribs spaced slightly inwardly from and paralleling each edge purportedly retarding such inward flow of mastic, the ribs either touching the wall when the tile is applied thereto or being spaced inwardly from a wall thus allowing excess

mastic to escape into the center area of the tile,

such result is not so new and unobvious as to constitute invention over the 1941 tile, the Luster-Brown patent, or the Bevelock tile.

THE INFRINGEMENT ISSUE

36. At the inception of the trial of this case, this Court ruled that the trial would be restricted to the issue of "prior art". However, during the course of the trial, the parties introduced and the Court permitted into evidence, some evidence concerning the infringement issue.

37. Neither party has purported to have introduced all its evidence concerning the infringement issue in the proceedings had to date, and the Court does not, by the following findings, or otherwise, intend to conclude the parties on that issue, should decision of that issue become necessary.

38. Findings 39 through 43 of these Findings of Fact constitute merely this Court's opinion with respect to the infringement issue, based solely on the limited evidence thus far in the record on that issue.

39. In open court, on the record, plaintiff restricted himself to and elected to rely on the position that Claim 4 of his patent is the only claim infringed by defendant's tile.

40. Claim 4 describes the entire combination of four-sided flange, projecting rib parallel to each edge and narrow channels created by the juxtaposition of the rib slightly inward from each edge. It does not in specific language require the rib to be spaced inwardly from the wall, or the flange to be beveled.

41. Insofar as Claim 4 must be read and construed in conformity with the illustrations and specifications of plaintiff's patent as a whole, it should be construed as encompassing a plastic wall tile having a beveled flange and a four-sided rib spaced inwardly from a wall when applied thereto.

42. The rectangular plastic wall tile produced by defendant after plaintiff's

patent had issued, called Landis "Pro", contains (a) a four-sided beveled flange, (b) a projecting square or rectangular rib paralleling each edge, which rib is spaced inwardly from a mastic-coated wall upon application of the tile thereto, and (c) the resulting narrow channels between the rib and edge.

43. The rectangular plastic wall tile produced by defendant after plaintiff's patent had issued, called Landis "Pro", embodies substantially the same features called for by Claim 4 of plaintiff's patent, when said Claim 4 is construed in conjunction with the specifications and illustrations of plaintiff's patent as a whole.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties to and subject matter of this action.

2. The 1941 tile, described in Findings of Fact Nos. 16–20, and placed in evidence by defendant as prior art, was on sale in this country more than one year prior to plaintiff's application for patent within the meaning of 35 U.S.C. § 102(b) and was not an abandoned experiment.

3. The Luster-Brown Patent No. 2,-693,102, described in Findings of Fact Nos. 21–25 and placed in evidence by the defendant as prior art, was known or used by others before the alleged invention of plaintiff within the meaning of 35 U.S.C. § 102(a).

4. The Bevelock tile described in Findings of Fact Nos. 26–30, and placed in evidence by the defendant as prior art, was in public use or on sale more than one year prior to plaintiff's application for patent within the meaning of 35 U.S.C. § 102(b).

5. Any differences between the subject matter of plaintiff's Patent No. 2,-859,607 and the said prior art exhibits are such that said subject matter would have been obvious, at the time the plaintiff's purported invention was made, to a person having ordinary skill in the art to which the subject matter pertains, 35 U.S.C. § 103.

■ 6. The plastic wall tile defined by Claims 1, 2, 3 and 4, and each of them, of United States Letters Patent 2,859,607 is anticipated by the prior art.

■ 7. Even if not anticipated by said prior art, the plastic wall tile defined by Claims 1, 2, 3 and 4, and each of them, of United States Letters Patent No. 2,859,607, produces no new or unobvious result over the prior art which could rise to the status of invention.

■ 8. The presumption of validity arising from the grant of a patent does not exist as against relevant prior art not before the Patent Office. As disclosed in the Findings of Fact, none of the relevant prior art placed in evidence by the defendant was before the Patent Office during the prosecution proceedings respecting United States Letters Patent No. 2,859,607.

■ 9. Claims 1, 2, 3 and 4 of United States Letters Patent No. 2,859,607 are invalid as failing to define patentable invention.

■ 10. But for the determination of invalidity set forth in Conclusion of Law No. 9, it is the opinion of the Court based on the evidence thus far presented regarding infringement, that defendant has infringed Claim 4 of Patent No. 2,-859,607, by making, using and selling, without the consent of plaintiff, plastic wall tile, as defined in said Claim 4, within the Northern District of Illinois. This opinion does not conclude the parties on this issue, should decision on the issue become necessary and should the parties desire to introduce further evidence on the issue.

11. The Complaint of plaintiff must be dismissed with prejudice and judgment entered for the defendant on the issue of validity.